IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSHUA HARE                              :

                                         :

    v.                                   :    Civil Action No. DKC 09-0599

                                         :

OPRYLAND HOSPITALITY, LLC
                                         :

## MEMORANDUM OPINION

Presently pending and ready for review in this personal injury case are (1) Defendant Opryland Hospitality, LLC's motion for summary judgment and to exclude Plaintiff's expert witnesses (Paper 22), (2) Plaintiff Joshua Hare's motion to bar expert testimony (Paper 23), (3) Plaintiff's motion requesting missing witness and spoliation of evidence instructions (Paper 25), (4) Plaintiff's motion for leave to file a second amended complaint (Paper 38), (5) Plaintiff's motion for leave to file a surreply in response to Defendant's motion for summary judgment (Paper 36), and (6) Plaintiff's motion to compel discovery depositions (Paper 39). The issues are fully briefed and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, Plaintiff's motion for leave to file a second amended complaint will be granted in part and denied in part, Defendant's motion for summary judgment and to exclude Plaintiff's expert witnesses will be granted in

part and denied in part, Plaintiff's motion for leave to file a surreply in response to Defendant's motion for summary judgment will be granted in part and denied in part, Plaintiff's motion to bar expert testimony will be granted in part and denied in part, Plaintiff's motion requesting missing witness and spoliation of evidence instructions will be denied, and Plaintiff's motion to compel discovery depositions will be denied.

## I. Background

The following facts are either undisputed or viewed in the light most favorable to Plaintiff Joshua Hare, who is the non-moving party for the purpose of summary judgment. On the evening of July 28 and the morning of July 29, 2008, Plaintiff attended an event called the "White Party" at the Pose Ultra Lounge located in the Gaylord National Resort and Convention Center at National Harbor ("Gaylord National"). (Paper 22, Attach. 5, Hare Dep., at 14). Plaintiff was accompanied by Rodney Thomas, James Turner, and Anthony Lewis. (*Id.* at 20). The group had a reserved table at the party and was billed $1399.62 for two bottles of "Grey Goose" vodka, one bottle of "Patron Silver" tequila, and two bottles of "Veuve Clic Yello" champagne. (*Id.* at 24; Paper 22, Attach. 7, Duplicate Check).

At the end of the party, around 3:00 or 3:30 a.m., Plaintiff's group was approached by security guards who asked them to leave. (Paper 22, Attach. 5, Hare Dep., at 42). Plaintiff and his friends explained that they were waiting for their credit cards. (*Id.*). After the request to leave, Plaintiff was talking with a few women. (*Id.* at 45). Around this time, Mr. Thomas got into an argument with a busboy and security officers tried to get Mr. Thomas, Mr. Turner, and Mr. Lewis, to leave. (Paper 22, Attach. 6, Thomas Dep., at 6, 19). Mr. Thomas was picked up by Gaylord National Security and Safety Services Officer Karl Eric Hedgeman and carried toward the elevators. (*Id.* at 19). Plaintiff saw this and rushed over to Mr. Thomas. (Paper 22, Attach. 5, Hare Dep., at 45, 82). Mr. Thomas tried to get Mr. Hedgeman to drop him and may have pushed Mr. Hedgeman. (Paper 22, Attach. 6, Thomas Dep., at 21, 27). An altercation ensued between Plaintiff and Mr. Hedgeman, and, Plaintiff testified, he was hit in the face by Mr. Hedgeman with a bottle. (Paper 22, Attach. 5, Hare Dep., at 57-58). Plaintiff's face was bleeding after the altercation. (Paper 22, Attach. 6, Thomas Dep., at 22).

After the incident, the police arrived and Plaintiff was taken to Fort Washington Hospital. (Paper 22, Attach. 6, Thomas Dep., at 22; Paper 22, Attach. 5, Hare Dep., at 69-70).

Plaintiff was treated at the hospital and again a week later in Connecticut, his home state, by Dr. Joseph O'Connell. (Paper 22, Attach. 5, Hare Dep., at 70). Plaintiff testified that he did not work during the week after the incident. (*Id.*).

On November 24, 2008, Plaintiff filed a complaint against Gaylord Entertainment Company and Gaylord National, LLC in the Circuit Court for Prince George's County, Maryland. Plaintiff's complaint alleged that the Defendants were liable for Plaintiff's injuries because they were Mr. Hedgeman's employer and Mr. Hedgeman was acting in the scope of his employment at the time of the incident and because they were negligent in hiring, retaining, and training Mr. Hedgeman. (Paper 2, at 2). On February 25, 2009, Plaintiff filed an amended complaint, naming Opryland Hospitality, LLC and alleging the same causes of action. (Paper 6). On March 10, 2009, the case was removed to this court on the basis of diversity jurisdiction. (Paper 1).

## II. Motion for Leave to File a Second Amended Complaint

Plaintiff moves for leave to file a second amended complaint. Plaintiff notes that his amended complaint "alleged only that the defendant was liable for its *respondeat superior* obligation for its employee's excessive force when the employee attacked the plaintiff with a liquor bottle, and for defendant's own negligence 'in hiring, retaining and training this employee,

4

who failed to use reasonable means of dealing with patrons.'" (Paper 38, at 1)(quoting Paper 6 ¶ 5). After reviewing a surveillance video that Defendant produced during discovery, Plaintiff seeks to add allegations to his amended complaint regarding Defendant's negligent supervision and training of employees other than Mr. Hedgeman. (Paper 38, at 2-3, 6).

If given leave to amend, Plaintiff would allege that Defendant is liable for Plaintiff's injuries because (1) "defendant's employees negligently mishandled closing procedures," (2) "defendant's manager failed to supervise his staff adequately, and allowed the staff to become confrontational . . . ," and (3) "defendant failed to adequately train its employees . . . in how to avoid and/or de-escalate confrontations with patrons, and how to avoid use of excessive and deadly force." (Paper 38, Attach. 1 ¶ 8(A)-(C)). Plaintiff would also add a claim for punitive damages, because "the discussion of Maryland case law in connection with defendant's motion for summary judgment makes clear that a corporate defendant can be liable under Maryland law for its employee's intentional tort." (Paper 38, at 6; *Id.*, Attach. 1 ¶¶ 10-11).

Defendant responds that Plaintiff's motion to amend should be denied. Defendant notes that Plaintiff did not request an extension of the deadline to amend pleadings when the scheduling

order was issued on March 13, 2009, setting the pleading deadline as April 27, 2009, or when the scheduling order was revised two times, on May 29, 2009, and on August 25, 2009. (Paper 40, at 3)(citing Paper 13). Defendant argues that Plaintiff does not have "good cause" to amend under Fed.R.Civ.P. 16 because Plaintiff lacked diligence in amending his complaint. Defendant contends that Plaintiff had access to the surveillance video upon which he bases his new allegations before Defendant produced it in discovery. (*Id.* at 7). Defendant also notes that Plaintiff intentionally delayed his request to amend his complaint. (*Id.* at 8)(citing Paper 38, at 3)("In this case, the plaintiff had planned on filing the amendments to the complaint at the time of the pretrial conference (not yet scheduled). The plaintiff moves now for leave to file the second amended complaint because of statements made by the defendant in its dispositive motion."). Finally, Defendant argues that it would be prejudiced if Plaintiff is permitted to amend because summary judgment has been briefed already and reopening discovery would be costly. (Paper 40, at 14-16).

Plaintiff's motion for leave to amend his complaint triggers both Federal Rule of Civil Procedure 15(a), governing amendments to pleadings, and Rule 16(b). The standards for

satisfying these two rules are at odds. Rule 15(a)(2) states in
pertinent part that "leave shall be freely given when justice so
requires," while Rule 16(b)(4) states that "[a] schedule may be
modified only for good cause and with the judge's consent." The
Fourth Circuit resolved this tension in *Nourison Rug Corp. v.
Parvisian*, 535 F.3d 295, 298 (4th Cir. 2008):

> Given their heavy case loads, district
> courts require the effective case management
> tools provided by Rule 16. Therefore, after
> the deadlines provided by a scheduling order
> have passed, the good cause standard must be
> satisfied to justify leave to amend the
> pleadings. This result is consistent with
> rulings of other circuits. *See O'Connell v.
> Hyatt Hotels of Puerto Rico*, 357 F.3d 152,
> 154-55 (1st Cir.2004); *Parker v. Columbia
> Pictures Indus.*, 204 F.3d 326, 340 (2d
> Cir.2000); *S & W Enters. v. SouthTrust Bank
> of Ala.*, 315 F.3d 533, 536 (5th Cir.2003);
> *Leary v. Daeschner*, 349 F.3d 888, 906 (6th
> Cir.2003); *In re Milk Prods. Antitrust
> Litig.*, 195 F.3d 430, 437-38 (8th Cir.1999);
> *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417,
> 1419 (11th Cir.1998).

Fed.R.Civ.P. Rule 16(b)'s "good cause" standard focuses on the
timeliness of the amendment and the reasons for its tardy
submission. Because a court's scheduling order "'is not a
frivolous piece of paper, idly entered, which can be cavalierly
disregarded by counsel without peril,'" *Potomac Elec. Power Co.
v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D.Md. 1999)
(quoting *Gestetner v. Case Equip. Co.*, 108 F.R.D. 138, 141
(D.Me. 1985)), a movant must demonstrate that the reasons for

the tardiness of its motion justify a departure from the rules set by the court in its Scheduling Order.

The primary consideration for Rule 16(b)'s "good cause" standard is the movant's diligence. Lack of diligence and carelessness are the "hallmarks of failure to meet the good cause standard." *W. Va. Hous. Dev. Fund v. Ocwen Tech. Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W.Va. 1995).

It is far too late in this case for Plaintiff to add new claims against Defendant related to Defendant's supervision and training of employees other than Mr. Hedgeman. The theory of Plaintiff's first amended complaint only relates to the actions of Mr. Hedgeman, who allegedly injured Plaintiff. After discovery has closed and summary judgment has been briefed it would be prejudicial to Defendant to expand the scope of this case to seek to impose liability on Defendant for the actions of other employees. Likewise, Plaintiff was not diligent in seeking to add a claim for punitive damages. Thus, Plaintiff will not be granted leave to add the allegations it proposes regarding employees other than Mr. Hedgeman in Paper 38, Attach.

1, ¶¶ 8(A)-(C) and the claim for punitive damages in ¶¶ 10-11. On the other hand, the allegations pertaining to Defendant's hiring, training, and retention of Mr. Hedgeman in Paper 38, Attach. 1 ¶¶ 8(D)-(E) do not significantly alter the scope of Plaintiff's claims, and may be added.

## III. Motion to Exclude Plaintiff's Expert Witnesses and for Summary Judgment

Defendant moves to exclude the testimony of two of Plaintiff's expert witnesses and for summary judgment. Defendant argues that Plaintiff has not established the elements of duty and causation for his negligence count or the scope of employment for his *respondeat superior* count. Because Defendant asserts that Plaintiff cannot establish duty without the testimony of Mr. Chris McGoey or causation without the testimony of Dr. Joseph O'Connell, Defendant's request to exclude the testimony of those experts will be addressed first.

### A. Testimony of Dr. Joseph O'Connell

Plaintiff has designated Dr. Joseph O'Connell to testify about, among other things, the cause of Plaintiff's facial laceration and the cost of Plaintiff's future medical treatment for the scar caused by the laceration. Defendant argues that Dr. O'Connell's testimony regarding the cause of Plaintiff's injury and costs of future medical treatment for that injury should be excluded because it is unreliable under *Daubert v.*

*Merrell Dow Pharms., Inc*, 509 U.S. 579, 592 (1993) and is prejudicial to Defendant. (Paper 22, Attach. 1, at 13).

## 1. Causation

During his deposition, Dr. O'Connell expressed the opinion that Plaintiff's facial laceration was caused by being hit with a bottle and explained his position, stating, "I tend to believe what my patients tell me. And I – based on what I saw with my eyes, it was certainly consistent with what I was told by Mr. Hare." (Paper 32, Attach. 2, O'Connell Dep., at 22).[1]

Defendant contends that Dr. O'Connell should not be permitted to testify as to the cause of the laceration because he failed to conduct a "differential diagnosis" that considered alternative causes for the injury. (*Id.* at 14). Plaintiff counters that Dr. O'Connell's testimony is admissible because a treating physician is allowed to testify to his conclusions during treatment concerning the cause of his patient's injuries. (Paper 32, at 18). Defendant has demonstrated that Dr. O'Connell's testimony regarding the cause of Plaintiff's injury must be excluded.

_____

[1] Plaintiff has testified that he was hit with a bottle and has provided other evidence that a bottle was the cause of his injury, such as surveillance videotape and eyewitness testimony. (Paper 22, Attach. 5, Hare Dep., at 57-58; Paper 32, at 20).

The disclosure of expert testimony is governed by Fed.R.Civ.P. 26(a)(2) and Local Rule 104.10. Under Rule 26(a)(2)(A), parties must disclose the identities of expert witnesses before trial. Fed.R.Civ.P. 26(a)(2)(A). If the witness is either (1) "retained or specially employed to provide expert testimony in the case" or (2) a party's employee whose duties regularly involve giving expert testimony, the disclosures must be accompanied by a written report of the expected testimony unless otherwise ordered by the Court. Fed.R.Civ.P. 26(a)(2)(B). Local Rule 104.10 explains that a written report "need not be provided as to hybrid fact/expert witnesses such as treating physicians." Judge Grimm elaborated on Rule 104.10's requirements for the testimony of treating physicians in *Sullivan v. Glock*, 175 F.R.D. 497, 500 (D.Md. 1997):

> a witness can be a hybrid witness as to certain opinions, but a retained expert as to others . . . . to the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient – as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury – then no Rule 26(a)(2)(B) statement should be required.

If a treating physician intends to testify regarding things which are not based on their observations during the course of

treating the patient's illness or injury, they must appropriately disclose those opinions in an expert report. *See e.g., Bucher v. Gainey Transp. Serv. Of Ind., Inc.*, 167 F.R.D. 387, 390 (M.D.Pa. 1996). Additionally, "a treating physician's testimony regarding causation of an injury or illness is subject to the same standards of scientific reliability that govern the testimony of experts hired solely for purposes of litigation." *Perkins v. United States*, 626 F.Supp.2d 587, n. 7 (E.D.Va. 2009)(quoting *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1207 (8th Cir. 2000); *see also Gass v. Marriot Hotel Servs., Inc.*, 558 F.3d 419, 426 (6th Cir. 2009)(treating physician's testimony remains subject to requirement that it have a reliable basis in the knowledge and experience of his discipline).

Here, Dr. O'Connell has not demonstrated a sufficiently reliable method to support his theory of causation. Dr. O'Connell testified that his basis for stating that Plaintiff's face laceration was caused by being hit with a glass bottle was the fact that Plaintiff had told him it was. (Paper 22, Exhibit 8, O'Connell Dep., at 22-23). Dr. O'Connell further testified that he did not consider any other causes for the injury nor could he identify any common characteristics that distinguish lacerations made by glass bottles from those made by other objects. (*Id.*) Where the sole basis for a physician's

testimony regarding causation is the patient's self-reporting that testimony is unreliable and should be excluded. *See Perkins*, 626 F.Supp.2d at 592 (excluding expert testimony regarding causation where doctor simply took the patient's explanation and adopted it as his opinion).

Plaintiff cannot use the physician's "opinion" on causation to back into a finding that a bottle caused the injury. This treating physician may be able to testify that an injury was fresh enough to have occurred during the altercation, and to assist the jury in understanding the nature and extent of the injury, but it will be up to the jury to determine based on other evidence whether a bottle wielded by Mr. Hedgeman was the cause.

## 2. Cost of Future Medical Care

Additionally, Defendant asserts that Dr. O'Connell's opinion on the cost of Plaintiff's future medical care should be excluded because it was not disclosed in a written report, Rule 26(a)(2) designation, or answers to interrogatories. (*Id.* at 16-17). Plaintiff asserts that Dr. O'Connell's opinion as to the cost of Plaintiff's future medical care for treatment of the scar on his face is admissible because his medical report mentioned that Plaintiff would likely need more surgery. (*Id.* at 21).

Dr. O'Connell's testimony regarding the future costs of treatment will not be excluded at this time. Dr. O'Connell's statements regarding the costs of potential surgical options were based on his observations of Plaintiff's injuries and his diagnosis of the proper course of treatment as a treating physician. As such, Dr. O'Connell was not required to disclose them in an expert report. Defendant had the opportunity to question Dr. O'Connell regarding the basis for his opinion regarding costs of future treatment and did not elicit any information calling into question the reasonableness of the testimony that would warrant its exclusion at this time.

**B.    Testimony of Mr. Chris McGoey**

Defendant also argues that the testimony of Plaintiff's expert on security issues, Mr. Chris McGoey, must be excluded. Defendant asserts that Mr. McGoey does not have a sufficient background in bar or nightclub security, including experience in Maryland, Virginia, or the District of Columbia, needed to testify regarding the "standard of care in Maryland for Security and Safety Services" owed to Plaintiff by Defendant. (Paper 22, Attach. 1, at 21). Furthermore, Defendant argues that Mr. McGoey failed to offer opinions based on reliable, objective methodologies. Defendant contends that Mr. McGoey's opinions were based only on his "education, training, and experience and

14

the facts of this case . . . ." and not an objective source, as required by *Daubert* and *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 200 (4th Cir. 2001).  Finally, Defendant asserts that Mr. McGoey's expert opinions should be excluded because his expert report failed adequately to disclose his opinions under Fed.R.Civ.P. 26(a)(2)(B) and the report was served late, on September 12, 2009, and too close in time to his deposition, on October 22, 2009.  (Paper 22, Attach. 1, at 26-30).

Plaintiff responds first, that Mr. McGoey is qualified to testify as a security expert.  Plaintiff emphasizes that Mr. McGoey has testified in four hundred depositions and in about eighty federal and state court trials and has never failed to qualify as an expert.  (Paper 32, at 28-29).  Plaintiff also maintains that in preparing his expert report Mr. McGoey "reviewed defendant's surveillance video showing the incident in question, read depositions, including those of plaintiff, eyewitnesses, and Opryland's corporate designee, read Opryland's responses to interrogatories and document requests, and reviewed relevant Maryland statutes and case law."  (*Id.* at 30). Plaintiff argues that Mr. McGoey's lack of experience in Maryland is irrelevant because "Defendant fails to identify any relevant standard of care that would be unique to Maryland" and "Opryland's own manuals concern its operations nationally, and

15

are not limited to any specific locale, including Prince George's County, Maryland." (*Id.*). Second, Plaintiff argues that Mr. McGoey's testimony is admissible under *Daubert* and its progeny because he employed the same intellectual rigor as an expert in the relevant field. (*Id.* at 34-35). Third, Plaintiff argues that Mr. McGoey's expert report was sent to Defendant in a timely manner, given that Defendant delayed other discovery, including the production of the surveillance videotape, the deposition of Opryland's corporate designee, Mr. Jenkins, and the deposition of Plaintiff. (*Id.* at 22-23). Plaintiff asserts that Mr. McGoey's expert report was complete and sufficiently covered his opinions, and, even if it was lacking, that Fed.R.Civ.P. 26 does not require supplementation until the pretrial conference. (*Id.* at 25-26).

Our analysis begins with Defendant's assertion that Mr. McGoey lacked the requisite qualifications to be considered an expert in the relevant field. Under Fed.R.Evid. 702, to be "qualified" as an expert, a witness must have "knowledge, skill, experience, training, or education" in the subject area in which he intends to testify. An expert's qualification depends on "the nature of the opinion he offers." *See Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984). "The fact that an individual is qualified as an expert in one area, does

not *ipso facto* qualify him to testify as an expert in all related areas." *Shreve v. Sears, Roebuck & Co.*, 166 F.Supp.2d 387, 391 (D.Md. 2001); *see also* 29 Charles A. Wright and Victor J. Gold, Federal Practice & Procedure § 6265 (1997)("qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony."). "In all cases . . . the district court must ensure that it is dealing with an expert, not just a hired gun." *Tyus v. Urban Search Mgmt.*, 102 F.3d 256, 263 (7th Cir. 1996), *cert. denied*, 520 U.S. 1251 (1997). The proponent of the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *See Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000), *cert. denied*, 532 U.S. 921 (2001).

Defendant contends that Plaintiff has failed to demonstrate that Mr. McGoey is an expert on the hiring, retention, and training of security and safety guards in Maryland. (Paper 22, Attach. 1, at 17-22). Defendant argues that none of Mr. McGoey's qualifications are sufficiently related to the areas in which Plaintiff seek to qualify him as an expert. For example, out of the hundreds of publications listed in Mr. McGoey's report, he testified that only five or six specifically deal with nightclub and bar security, and these articles were self-

published by Mr. McGoey on his website. (Paper 32, Exhibit S, McGoey Dep., at 114). Likewise, the books authored by Mr. McGoey on security were published by a company he owned. (*Id.* at 20)(citing list of books on Mr. McGoey's website, http://www.crimedoctor.com/nightclub_bar_security.htm). Also, Defendant points to Mr. McGoey's lack of on the job experience and the fact that his current involvement in nightclubs and bars is limited to the West Coast. (*Id.* at 21).

Mr. McGoey is undoubtedly experienced at being an expert witness. While his expertise in the specific field of nightclub security and the hiring, retaining, and training of security and safety guards in Maryland is more limited, Mr. McGoey has identified sufficient prior experience and training to demonstrate that he possesses knowledge greater than the average layperson in these fields. *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000); *see also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000). Mr. McGoey is certified in relevant areas (*see* Paper 32, Exhibit 23)(listing Mr. McGoey's certifications as a Certified Protection Professional, Certified Security Professional, and Certified Professional Investigator), has consulted with nightclubs and bars regarding their security practices, given presentations on nightclub security, and testified in prior

cases as a security expert. (Paper 32, *at* 28-29)(citing Exhibits 32, McGoey Expert Report, and Exhibit 33, McGoey Declaration). Therefore, Mr. McGoey has passed the initial threshold to qualify as an expert witness.

The mere fact that he qualifies as an expert does not lead automatically to the conclusion that Mr. McGoey's testimony is admissible; the content of his testimony must also meet certain standards. Under Rule 702, the district court has "a special obligation . . . to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)(quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Rule 702 provides:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Court of Appeals for the Fourth Circuit explained the court's test under Rule 702 as follows:

> [t]he first prong of this inquiry necessitates an examination of whether the

> reasoning or methodology underlying the
> expert's proffered opinion is reliable –
> that is, whether it is supported by adequate
> validation to render it trustworthy. *See*
> [*Daubert*, 509 U.S.] at 590 n.9. The second
> prong of the inquiry requires an analysis of
> whether the opinion is relevant to the facts
> at issue. *See id.* at 591-92.

*Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999); *see also Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 196 (D.Md. 2003).

To be considered reliable, an expert opinion "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)(citing *Daubert*, 509 U.S. at 592-93). The district court enjoys "broad latitude" in determining the reliability and admissibility of expert testimony, and its determination receives considerable deference. *Kumho Tire Co.*, 526 U.S. at 142 (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)); *see also Oglesby*, 190 F.3d at 250.

Defendant argues that his opinions are conclusions based on Mr. McGoey's subjective beliefs rather than any valid scientific method and they should be excluded as *ipse dixit* testimony. (Paper 22, Attach. 1, at 25-26). Plaintiff counters that Defendant did not inquire into Mr. McGoey's methodology during

his deposition and thus was not fully informed about his approach. Plaintiff attached a declaration to his opposition brief that provides further details regarding Mr. McGoey's methodology for the court. (Paper 32, at 34, Exhibit 33). In this declaration, Mr. McGoey states that he applies a standard methodology to "assess performance and compliance involving proper hiring, training, and supervision of security staff" which requires "a review of the law, regulations, applicant screening, training records, and observation or testimony of how security, management, and patrons interact, under the circumstances." (Paper 32, Exhibit 33 at ¶ 11-12). Mr. McGoey further declared that he had reviewed Opryland's security management guidelines and testimony of Opryland's corporate representatives to understand how the written procedures were implemented. He also studied the surveillance video frame-by-frame to observe the interaction between security, management, and patrons at the Pose Ultra Lounge and compared these actions to the industry standards of case. (*Id.* at ¶¶ 19-25).

Mr. McGoey's methodology is substantially the same as the methodology employed by Defendant's security expert, David Qualls. Mr. Qualls is a former employee of the Baltimore City Police, who now works as a special investigator for the FBI and has his own security company. (Paper 35, Exhibit S). Mr.

Qualls's expert report indicates that he based his opinions on the same types of materials reviewed by Mr. McGoey and his own education, training and experience. (*Id.*)(listing materials reviewed in preparation of report, including deposition transcripts, police reports, the Gaylord Hotel's security manuals, and the surveillance video). The key difference in their methodologies is that Mr. Qualls has prior experience in Maryland and compared the conduct of Defendant's employees with what he deemed to be the Maryland standard of care, whereas Mr. McGoey referenced a national industry standard of care. Yet, neither expert identified any source materials containing the relevant standard of care or expressed to any degree of detail the manner in which they became knowledgeable about the standard of care. The gist of their analysis was to compare their understanding of the events that took place on June 28 and 29, 2008, with their prior experience and training and to form an opinion about whether Defendant's employees' behavior departed from the norm. If Defendant maintains that Mr. Qualls is an expert in the field, the court cannot agree with Defendant's contention that Mr. McGoey did not apply the same intellectual rigor as an expert in the relevant field.

Finally, the court must decide whether Mr. McGoey's expert report satisfied the requirements of Fed.R.Civ.P. 26(a)(2) and

whether its delayed submission warrants exclusion. Rule 26(a)(2) imposes disclosure requirements for expert witnesses "retained or specially employed to provide expert testimony in the case." Fed.R.Civ.P. 26(a)(2)(B). Specifically for such witnesses, the expert disclosure must "be accompanied by a written report prepared and signed by the witness" which includes:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ P. 26(a)(2)(B). Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1). It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. *Carr v. Deeds*, 453 F.3d 593, 602 (4th Cir. 2006).

23

The cases cited by Defendant where expert reports were excluded for failing to comply with the substantive requirements of Rule 26(a)(2)(B) involved more egregious departures from the Rule. In *Carr*, for example, the plaintiff's Rule 26(a)(2)(B) expert disclosure report was not merely late, it was never filed. 453 F.3d at 604. The plaintiff sought to rely solely on expert reports attached to its complaint which contained no information about the expert's qualifications, his publications, the compensation he would be paid for his work and testimony, or other cases in which he had testified as an expert. *Id.* In *R.C. Olmstead, Inc. v. CU Interface, LLC*, 657 F.Supp.2d 905 (N.D.Ohio 2008), *aff'd*, 606 F.3d 262 (6th Cir. 2010), the deficient expert report in a patent case consisted of just one nine-sentence paragraph. The report lacked sufficient detail to identify the software versions that were examined, and it failed to mention the expert's technical and educational experience or his publications from the prior ten years. *Id.* at 909-912.

While Mr. McGoey's expert report is not the paragon of completeness, it contains all the requisite elements and sufficient detail to avoid exclusion. His report states the typical operating procedure for nightclubs, it explains what actions Defendant took that violated the standard of care, and it includes the information Mr. McGoey examined in forming his

opinions. The report also contained McGoey's qualifications, a list of the other cases in which he has testified, and the compensation he will be paid. In sum the disclosure set forth a sufficient statement of McGoey's opinions and the basis and reasons for his opinions to eliminate any surprise at trial.

Although its content was sufficient to satisfy Rule 26(a)(2)(B), Mr. McGoey's expert report was not submitted until months after the deadline. Under the initial scheduling order, Mr. McGoey's report was due on May 12, 2009. (Paper 13). At the parties' request, the court granted an extension of some discovery deadlines on May 29, 2009, and thereby extended the deadline for Mr. McGoey's report to June 12, 2009. (Papers 16 and 17). Although, Plaintiff identified Mr. McGoey as a liability expert in "Plaintiff's Preliminary Rule 26 Statement" filed on July 12, 2009, Mr. McGoey's report was not submitted to Defendant until September 15, 2009. (Paper 22, Exhibit 3). Plaintiff also failed to file a timely supplementation of Mr. McGoey's expert report.[2]

---

[2] Per the revised scheduling order, Rule 26(e)(2) supplemental expert reports were due on October 12, 2009. (Papers 18 and 19). Plaintiff did not supplement his reports by that date and in his briefing indicates that he believes supplemental expert reports are not due yet because no pretrial conference has been set. (Paper 32, at 25-26). Absent a scheduling order providing an explicit deadline for supplementation of expert reports, Plaintiff's delay may have been acceptable. The scheduling

25

Plaintiff argues that Mr. McGoey's expert report was late because of Defendant's delays producing evidence. Specifically, Plaintiff identifies Defendant's late production of the surveillance video on June 16, 2009, the deposition of Defendant's corporate designee, John Jenkins, on August 3, 2009, and the death of Plaintiff's father on August 14, 2009.[3] These events may have warranted an extension of discovery deadlines, but Plaintiff never requested one. Curiously, Plaintiff did not even request an extension in the parties' consent motion to modify the scheduling order filed on August 25, 2009, wherein Defendant requested and was granted an extension of its Rule 26(a)(2) expert disclosures. (Papers 18 and 19).

Nevertheless, the court will not exclude Mr. McGoey's initial expert report because its late submission did not substantially harm Defendant. The Fourth Circuit has identified the following five factors to guide district courts in determining whether a failure to comply with Rule 26(e) is

---

order makes clear, however, that Rule 26(e)(2) supplementations were due in October 2009 and neither party requested a further extension of that deadline.

[3] Defendant quarrels with Plaintiff's contention that the surveillance video was not timely produced and points out that Plaintiff's Requests for Production from January 13, 2009 were not served on Defendant Opryland, but rather on the initial Defendants, who were dismissed when the amended complaint was filed. (Paper 33, at 4).

substantially justified or harmless for purposes determining whether sanctions are warranted pursuant to Rule 37(c)(1): (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). Applying the five factors here supports admitting Mr. McGoey's late report. Although overdue, Mr. McGoey's report was still submitted a month before his deposition and sufficiently in advance of trial to avoid surprise. The evidence is critical to Plaintiff's case because it is necessary to establish the duty of care and breach thereof, and Plaintiff has offered a reason for its late submission. Mr. McGoey's testimony will be limited to the contents of this report and necessary explanations thereof, however, and further supplementation will not be permitted.

C.  **Summary Judgment**

1.  **Standard of Review**

Defendant has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well established that a motion for summary judgment will be granted only if there

exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(f); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc*., 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 376 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex*

*Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50. (citations omitted).

### 2. Analysis

### a. Negligence

Defendant argues that it is entitled to summary judgment on Plaintiff's negligence claim. Defendant contends that, assuming that Mr. McGoey's testimony is excluded, Plaintiff cannot prove that Defendant breached a duty that was owed to Plaintiff during the hiring, retention, and training of Mr. Hedgeman and therefore cannot prove negligence. Defendant insists that without Mr. McGoey's testimony, "the jury will be forced to speculate as to the proper procedures, methods, and training for Security and Safety Services Officers in Maryland and whether different hiring, retaining, and training under the facts of this case would have made a difference in the outcome." (Paper 22, Attach. 1, at 31). Defendant also asserts that Plaintiff will not be able to prove causation even if Mr.

McGoey's testimony is admitted because Plaintiff cannot show that proper hiring, retaining, and training could have resulted in a different outcome. (*Id.* at 32).

Plaintiff has not responded to Defendant's argument regarding whether he has proved negligence.

Under Maryland law to prevail on a claim of negligence, a plaintiff must prove: "(1) a duty owed to him, (2) a breach of that duty, (3) a legally cognizable causal relationship between the breach of duty and the harm suffered, and (4) damages." *Nat'l Grange Mut. Ins. Co. v. Verizon's Benefits Ctr.*, 541 F.Supp.2d 745, 749 (D.Md. 2008)(citing *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 531 (1986)). "Summary judgment in favor of the defendant may be appropriate if the plaintiff cannot show one of the essential elements to establish negligence." *Samuel v. Ford Motor Co.*, 112 F.Supp.2d 460, 467 (D.Md. 2000)(citing *Hensley v. Danek Med., Inc.*, 32 F.Supp.2d 345, 349-50 (W.D.N.C. 1998)), aff'd, *Berger v. Ford Motor Co.*, 95 Fed.Appx. 520 (2004).

As discussed above, Mr. McGoey's expert report will be admitted. With that report and Mr. McGoey's testimony, Plaintiff has produced sufficient evidence of the duty of care and breach of that duty to create a genuine issue of material fact. There is no dispute that Plaintiff was harmed by the

incidents on June 28 and 29, 2009 and has cognizable damages. The remaining question is whether Plaintiff has produced sufficient evidence of causation.

The causation requirement for negligent hiring and retention differs slightly from that for negligent training. Under Maryland law, to establish causation in a claim of negligent hiring or retention, the plaintiff must prove that the employer failed to conduct a reasonable inquiry when hiring or retaining the employee, and that the employer's negligence in hiring or retaining the employee was the proximate cause of plaintiff's injuries. *Cramer v. Hous. Opportunities Comm'n of Montgomery Cnty*, 304 Md. 705, 713 (1985). "If, for example, a reasonable inquiry would probably not have produced any information that would have persuaded a reasonable employer to refuse employment for the position sought, the failure to conduct an inquiry, though negligent, would not be a proximate cause of the harm." *Id.*

Here the record is unclear regarding the level of inquiry Defendant conducted prior to hiring Mr. Hedgeman. The report from Defendant's security expert Mr. Qualls states that Defendant conducts background checks before hiring all security officers, (Paper 354, Exhibit S), while the report from Plaintiff's security expert Mr. McGoey states that "[h]iring

31

Eric Hedgeman as a bouncer without a comprehensive background check was negligent management." (Paper 22, Exhibit 3, at 4). Defendant's corporate designee, John Jenkins confirmed that background checks are performed on security guards during the hiring process, but he could not discuss the details of the screenings conducted. (*See* Paper 34, Exhibit 3, Jenkins Dep., at 26-29).

Regardless, Plaintiff has not identified any information that a comprehensive background check might have revealed that would have reflected poorly on Mr. Hedgeman's fitness for a job. Mr. McGoey's expert report expressed his opinion, based on observing Mr. Hedgeman in the surveillance video, that Mr. Hedgeman showed "a violent temperament unsuitable for a person employed as a bouncer" (Paper 3, Exhibit 3, at 4), but he could not point to any information in Mr. Hedgeman's background that would have warned Defendant not to hire him. (Paper 22, Exhibit 15, McGoey Dep., at 16). Plaintiff does not elsewhere identify any information that a comprehensive background check would have revealed to caution Defendant from hiring Mr. Hedgeman nor has Plaintiff produced evidence of Mr. Hedgeman's prior misconduct on the job that would have justified firing him. Therefore, summary judgment will be granted in favor of Defendant on the negligent hiring and retention claims.

To establish causation for negligent training, the plaintiff must establish that the employer failed to use proper care in training the employee and that the employer's breach was the proximate cause of the injury. *Williams v. Cloverland Farms Dairy, Inc.*, 78 F.Supp.2d 479, 484 (D.Md. 1999). Plaintiff's security expert Mr. McGoey testified that Defendant's training was too generic and vague and did not provide instruction for specific issues facing security employees. For example, he testified that Defendant should have provided alcohol awareness training to teach its security employees how to recognize and assist drunk patrons. (Paper 32, Exhibit 32, McGoey Dep., at 101). Mr. McGoey also stated his opinion that with proper training, Mr. Hedgeman would not have used force on Plaintiff. (Paper 32, Exhibit 23, at 4). Although, Defendant's expert refutes these opinions, there is a genuine issue of material fact regarding the appropriate level of training for nightclub security officers and summary judgment will be denied with respect to the claim of negligent training.

**b.** ***Respondeat Superior***

Defendant argues that, even assuming that Mr. Hedgeman hit Plaintiff with a bottle, there is no evidence that such action was within the scope of Mr. Hedgeman's employment with Defendant, and Plaintiff therefore cannot prove *respondeat*

*superior* liability. Defendant notes that it is Plaintiff's burden to prove that Mr. Hedgeman was acting in the scope of his employment in order to establish that Defendant as vicariously liable for his actions. (*Id.* at 33). Defendant asserts that Mr. Hedgeman's motive for any action was purely personal and that Mr. Hedgeman was acting in self defense. (*Id.* at 34). Defendant concludes that Plaintiff has not met his burden and instead has offered some evidence to the contrary. (*Id.* at 35-36).

Plaintiff argues that he has proven that Mr. Hedgeman was acting in the scope of his employment when the incident occurred. Plaintiff presents the testimony of Defendant's corporate representative, Mr. Jenkins, who testified: "Q. So Opryland would be responsible for – [Mr. Hedgeman's] actions and conduct that night; true? . . . A. Yes." (Paper 32, at 15)(quoting Paper 32, Attach. 1, Jenkins Dep., at 61:8-15). Plaintiff also asserts that the question of whether Mr. Hedgeman's actions were done in furtherance of Defendant's business is a question of fact that should be left to the jury. (*Id.* at 16)(citing *Market Tavern v. Bowen*, 92 Md.App. 622 (1992); *Wilson Amusement Co. v. Spangler*, 143 Md. 98 (1923)).

"Under the doctrine of *respondeat superior*, an employer is jointly and severally liable for the torts committed by an

employee acting within the scope of his employment." *S. Mgmt. Corp. v. Taha*, 137 Md.App. 697, 719 (2001), *vacated on other grounds*, 367 Md. 564 (2002), *remanded to* 378 Md. 461 (2002)(citing *DiPino v. Davis*, 354 Md. 18, 47 (1991); *Oaks v. Connors*, 339 Md. 24, 30 (1995); *Tall v. Bd. of Sch. Comm'rs*, 120 Md.App. 236, 251 (1998)). An employee's tortious conduct is considered within the scope of employment when the conduct is in furtherance of the business of the employer and is authorized by the employer. *Sawyer v. Humphries*, 322 Md. 247, 255 (1991). "To be within the scope of the employment the conduct must be of the kind the servant is employed to perform and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distant from the authorized area, and actuated at least in part by a purpose to serve the master." *E. Coast Freight Lines v. Mayor of Baltimore*, 190 Md. 256, 285 (1948); *see also Sawyer*, 322 Md. at 255. Many factors are considered, including: whether the act is one commonly done by such servant; the time, place, and purpose of the act; the similarity in quality of the act done to the act authorized; the extent of departure from the normal method of accomplishing an authorized result; and whether the act is seriously criminal. *Sawyer*, 322 Md. at 256.

The parties dispute several facts that are material to the issue of whether Mr. Hedgeman was acting in the scope of his employment when Plaintiff was allegedly injured. At a minimum, the parties dispute whether Mr. Hedgeman was acting in furtherance of the business of the employer, whether the act is one commonly done by such servant, and whether the act is seriously criminal. Therefore, summary judgment will be denied as to Plaintiff's *respondeat superior* claim.

### c. Lost Wages

Defendant contends that Plaintiff should not be allowed to pursue damages for lost wages because he has not presented evidence of lost wages beyond his testimony that he missed one week of work. (*Id.* at 36). Plaintiff did not respond to Defendant's argument regarding whether he has proved lost wages. Aside from Plaintiff's testimony that he did not go to work for a week following the incident, Plaintiff has not provided any evidence of whether he lost wages and how much he lost. (Paper 22, Attach. 5, Hare Dep., at 70). Therefore, Plaintiff has not met his burden of proof and summary judgment will be granted in favor of Defendant on Plaintiff's lost wages claim.

## IV. Plaintiff's Motion for Leave to File a Surreply

Unless otherwise ordered by the court, surreply memoranda are not permitted. Local Rule 105.2(a). Leave to file a

surreply may be granted when the moving party otherwise would be unable to contest matters presented to the court for the first time in the opposing party's reply. *Khoury v. Meserve*, 268 F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 Fed. Appx. 960 (4th Cir. 2004).

Plaintiff maintains a surreply is warranted because Defendant raised "three new categories of argument" and a new category of relief in its reply: (1) that Plaintiff purposefully delayed discovery, (2) that Defendant seeks dismissal of the claims for negligent supervision, (3) that Defendant contends it is not bound by the testimony of Mr. Jenkins, and (4) that Defendant sought new relief in the form of attorney's fees and expenses. (Paper 36, Attach. 1, at 1). Defendant opposes Plaintiff's motion and maintains that no new issues were raised in its reply. (Paper 37, at 1-4).

Each of the "three new categories of argument" identified by Plaintiff had been previously addressed in the parties' briefing. Defendant and Plaintiff both discussed the timing of discovery in their initial briefs. (*See* Paper 22, Attach 1, at 26-28; Paper 32, at 22-23). Plaintiff also discussed the alleged negligent supervision in its opposition. (Paper 32, at 26, 30, 38). Finally Plaintiff cited to the testimony of Defendant's corporate designee, Mr. Jenkins, and cast his

37

statements as the position of the Defendant in Plaintiff's opposition brief. (*Id.* at 14). Defendant had not requested attorney's fees or expenses in its initial brief. But because the court is not inclined to entertain a motion for such fees at this time, no reply from Plaintiff is necessary. Therefore Plaintiff will not be permitted to file a surreply.

## V.   **Plaintiff's Motion to Bar Expert Testimony**

Plaintiff moves to bar testimony from Defendant's expert David Qualls concerning self-defense. Plaintiff contends that there is no factual basis in the record to support a claim of self-defense because there is no evidence that Plaintiff presented a threat to Mr. Hedgeman and no admissible evidence that Mr. Hedgeman perceived a threat and was responding to it. (Paper 24, at 6-7). Defendant counters that Mr. Qualls's opinion was based on his observation of Mr. Hedgeman's actions in the surveillance video and the testimony of eye witnesses. (Paper 30, at 1-2). In his reply brief, Plaintiff argued that the evidence supporting Mr. Qualls's opinion is inadmissible as hearsay. (Paper 33, at 1-5).

Pursuant to Fed.R.Evid. 703:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in

> forming opinions or inferences upon the
> subject, the *facts or data need not be*
> *admissible in evidence in order for the*
> *opinion or inference to be admitted*.

(emphasis added). However, Rule 703 also provides that:

> Facts or data that are otherwise
> inadmissible shall not be disclosed to the
> jury by the proponent of the opinion or
> inference unless the court determines that
> their probative value in assisting the jury
> to evaluate the expert's opinion
> substantially outweighs their prejudicial
> effect.

Thus, as long as the bases for an opinion are of the type normally relied on by an expert in the field, the opinion itself may be admissible, while the underlying facts or data may not be, unless brought out on cross-examination. Defendant has identified three bases for Mr. Qualls's conclusion that Mr. Hedgeman was acting in self-defense: (1) an incident report from Gaylord National's Security and Safety Services Officer Carlton Myatt who observed the incident and stated that Mr. Hedgeman was under attack and acted in self-defense; (2) the police report which identified Mr. Hedgeman as the "victim" and Plaintiff as a "suspect" and which reported Mr. Hedgeman's injuries and the fact that one of Plaintiff's companions allegedly struck Mr. Hedgeman with a bottle; and (3) the surveillance video. (Paper 30, at 1-2, Exhibits B and C).

Plaintiff does not challenge the use of that type of data by the expert, and the opinion itself is admissible.

The question of whether the underlying data or facts are admissible is a separate question and is not squarely presented at this time. Plaintiff has not challenged the admissibility of the surveillance video. Police reports can be exempt from the hearsay rules if they qualify as business records or public reports under Fed.R.Evid. 803(6) or 803(8). *See e.g., Nero v. Baltimore Cnty, Md.*, 512 F.Supp.2d 407, n.3 (D.Md. 2007)(finding that police reports qualify as business records under 803(6)). But the portions of the police report containing statements made by third party witnesses, if not subject to another hearsay exception, remain inadmissible hearsay. *See United States v. Burruss*, 418 F.2d 677, 678 (4th Cir. 1969)(holding that hearsay within police report was inadmissible).

Here, Defendant has identified several portions of the police report as factual support for Mr. Qualls's opinion including the fact that Mr. Hedgeman suffered from contusions and lacerations, and the fact that a Mr. Lewis was reported to have struck Mr. Hedgeman with the bottle. The witness reports that Mr. Lewis struck Mr. Hedgeman are hearsay and may be inadmissible if no other exception applies and the witnesses are not available to testify. The fact that Mr. Hedgeman suffered

injuries is an observation which the police officer preparing the report could have made himself and, thus, not hearsay. Accordingly at least a portion of the police report is admissible support for Mr. Qualls's expert opinion.

Finally with respect to the incident report Plaintiff asserts that this report is inadmissible because it fails to meet any of the hearsay exceptions of Fed.R.Evid. 803(6) or (8). The incident report at issue was prepared by the Gaylord National which is not a public office or agency; Rule 803(8) does not apply. The report may qualify as a hearsay exception under Rule 803(6), however, if these types of report are regularly prepared in the course of business by Gaylord National's security staff. The court need not make a final determination on the incident report's admissibility now, however, because an expert may rely on hearsay evidence as the basis for his opinion if that reliance is reasonable. *Milton Co. v. Council of Unit Owners of Bentley Place Condo.*, 121 Md.App. 100, 120 (1998), *aff'd*, 354 Md. 264 (1999).

## VI. Plaintiff's Motion Requesting Missing Witness and Spoliation of Evidence Instructions

Plaintiff has moved for jury instructions on the permissible adverse inferences for a missing witness and spoliation of evidence. (Paper 25). Plaintiff contends that Mr. Hedgeman is a missing witness over whom Defendant had

control as his employer and that Defendant's failure to make him available to testify warrants an instruction that his testimony would have has been disfavorable to Defendant. (Paper 25, Attach. 1, at 3-4). Plaintiff also argues that Defendant failed to preserve the full and complete surveillance video of the incident on June 29, 2008 and that failure warrants a spoliation instruction. (*Id.* at 4-5). Defendant counters that Mr. Hedgeman is no longer employed by Opryland and that it has provided his last known contact information to Plaintiff. In addition, Defendant notes that it is unaware of any efforts by Plaintiff to subpoena Mr. Hedgeman. Defendant also maintains that the spoliation instruction is not warranted. (Paper 31).

A missing witness instruction may be given if the failure of a party to call a witness permits an inference that the witness's testimony would be unfavorable to that party's case. *United States v. King*, No. 96-4052, 1998 WL 390961 (4th Cir. 1998). The instruction is appropriate if two requirements are met:

> First, it must be shown that the party
> failing to call the witness has it
> peculiarly within its power to produce the
> witness by showing either: a) that the
> witness is physically available only to the
> other party, or b) that, because of the
> witness's relationship with the other party,
> the witness pragmatically is only available
> to that party. Second, the witness's
> testimony must elucidate issues important to

> the trial, as opposed to being irrelevant or
> cumulative.

*Id.* (internal citations omitted); *see also United States v. Brooks*, 928 F.2d 1403, 1412 (4th Cir. 1991), *cert. denied*, 502 U.S. 845.

Here, Plaintiff fails to satisfy the first requirement because he has not shown that Mr. Hedgeman is available only to Defendant. The evidence shows that Mr. Hedgeman is no longer employed by Defendant, and Plaintiff was given his last known address. (Paper 31, Exhibit 4, Jenkins Dep., at 25:3-5). Accordingly, Defendant no longer has control over Mr. Hedgeman. Moreover, Plaintiff has not indicated that he has attempted to subpoena Mr. Hedgeman or established that he noticed him for deposition through Defendant while he was still employed by Defendant. A missing witness instruction is not warranted under such circumstances.

Plaintiff also seeks a negative inference spoliation instruction because Defendant allegedly failed to preserve the full and complete video recording of the events of June 29, 2008. Spoliation is "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 505 (D.Md.

2009)   A party seeking sanctions for spoliation must prove the
following elements:

> (1) [T]he party having control over the
> evidence had an obligation to preserve it
> when it was destroyed or altered; (2) the
> destruction or loss was accompanied by a
> "culpable state of mind;" and (3) the
> evidence that was destroyed or altered was
> 'relevant' to the claims or defenses of the
> party that sought the discovery of the
> spoliated evidence, to the extent that a
> reasonable factfinder could conclude that
> the lost evidence would have supported the
> claims or defenses of the party that sought
> it.

*Id.* at 509 *(citing Thompson v. U.S. Dep't of Hous. & Urban Dev.*,
219 F.R.D. 93, 101 (D.Md. 2003).[4]

The duty to preserve material evidence is triggered not
only by litigation but also in the pre-litigation period if a
party reasonably should know that the evidence may be relevant
to anticipated litigation.   *Silvestri v. Gen. Motors Corp.*, 271
F.3d 583, 591 (4th Cir. 2001).   Once the duty is triggered,

---

[4] The parties dispute whether state or federal law on spoliation
is applicable.   Defendant contends that the issue of spoliation
is governed by federal law (Paper 31, at 5), while Plaintiff
maintains that it draws upon the substantive law of the relevant
state.   (Paper 34, at 2).   In the Fourth Circuit, spoliation is
a question of federal law.   *Hodge v. Wal-Mart Stores, Inc.*, 360
F.3d 446, 449 (4th Cir. 2004)("The imposition of a sanction
(e.g., an adverse inference) for spoliation of evidence is an
inherent power of federal courts-though one limited to that
action necessary to redress conduct which abuses the judicial
process-and the decision to impose such a sanction is governed
by federal law.")(internal quotations omitted).

parties must preserve documents relevant to the potential claims or defenses of any parties to the litigation or the subject matter of the litigation. *Goodman*, 632 F.Supp.2d at 511-512 (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217-218 (S.D.N.Y. 2003)).

As for the second element, "there are three possible states of mind that can satisfy the culpability requirement: bad faith/knowing destruction, gross negligence, and ordinary negligence." *Goodman*, 632 F.Supp.2d at 518. The degree of fault determines the level of sanction. To draw an adverse inference from the absence, loss, or destruction of evidence, "requires a showing that the party knew the evidence was relevant to some issue at trial and that [its] willful conduct resulted in its loss or destruction." *Id.* at 530 (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)). "If a spoliator's conduct is merely negligent, therefore, the adverse inference instruction is not an appropriate sanction." *See Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450-51 (4th Cir. 2004).

As the party seeking the spoliation instruction, the burden is on Plaintiff to establish that the instruction is warranted. Plaintiff has not met his burden. First, Plaintiff has not proven that Defendant Opryland had a burden to preserve

surveillance videos, aside from the portion provided to the police and produced during discovery. Plaintiff contends that the video produced by Defendant begins "in the middle of the incident" and does not show what prompted Mr. Thomas to remove his shirt. (Paper 34, at 1-2). But Plaintiff's accusation assumes the existence of additional relevant video footage that Defendant intentionally destroyed. Defendant does not dispute that there was additional video footage from that night, indeed in its opposition Defendant notes that there are approximately 751 surveillance cameras at the Gaylord National and thus potentially 3000 hours of video from that evening that could have been preserved. (Paper 31, at n.5). Defendant maintains that all the video showing the particular incident investigated by the police was preserved. (*Id.* at 7). Plaintiff's speculation that additional relevant footage once may have existed and was deleted, without any proof, is insufficient to establish that any relevant information was destroyed.

Plaintiff has also failed to establish that Defendant had the requisite state of mind. Mr. Jenkins testified that the Gaylord National's surveillance video is purged on a routine basis when the hard drive becomes full, unless an affirmative decision is made to preserve the recording. Defendant preserved the portions of the surveillance video that showed the incident

and presented them to the police department where Plaintiff and Mr. Thomas viewed them. (Paper 31, Exhibit 3, Thomas Dep., at 31-32; Paper 31, Exhibit 4, Jenkins Dep., at 68). Plaintiff has adduced no evidence that Defendant or its employees acted in bad faith or even that they knowingly destroyed relevant information.

Finally because there is no evidence as to the contents of the surveillance video from June 29, 2008 that was erased, Plaintiff cannot establish that the destroyed video was relevant. For all these reasons, Plaintiff's motion for an adverse inference spoliation instruction will be denied.

## VII. Plaintiff's Motion To Compel Discovery Depositions

Plaintiff has moved to compel the depositions of Defendant's employees, Robert Stanfield and Webb Rizor. Plaintiff first requested the two depositions on October 29, 2009, the day before discovery closed. (Paper 39, at 1-2). Plaintiff asserts that Mr. Stanfield and Mr. Rizor possess relevant information. (*Id*. at 3). Plaintiff argues that good cause exists to compel their depositions because they were requested before the close of discovery. Plaintiff states that Defendant's corporate representative identified Mr. Stanfield as "the individual who possessed knowledge of the operations of the Pose Ultra Lounge were [sic] Mr. Hare was attacked" and that he

would know "how and when bar tabs should be closed and how bottles and glasses should be removed from tables." (*Id.*). Plaintiff reports that "Mr. Rizor was identified as the individual who possessed knowledge of potential discussions by Opryland with Mr. Hare's attacker, Mr. Hedgeman." (*Id.*).

Defendant responds that Plaintiff's motion is not a motion to compel discovery, but instead is a motion to modify the scheduling order. Defendant asserts that when Plaintiff made his request to depose Mr. Stanfield and Mr. Rizor, Defendant agreed in good faith to consider the request. (Paper 41, at 3). Defendant contends that Plaintiff did not raise the issue again until two months later, after summary judgment had been briefed.

Fed.R.Civ.P. 16(b) governs the modification of a scheduling order. District courts have broad discretion to manage the timing of discovery, *Ardrey v. United Parcel Service*, 798 F.2d 679, 682 (4th Cir. 1986), *cert. denied*, 480 U.S. 934 (1987), and the only formal limitation on this discretion with respect to motions to amend scheduling orders is that the moving party must demonstrate good cause. Fed.R.Civ.P. 16(b)(4). "Good cause" is shown when the moving party demonstrates that the scheduling order deadlines cannot be met despite its diligent efforts. *Potomac*, 190 F.R.D. at 375 (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F.Supp. 959, 980 (D.S.C. 1997),

48

*aff'd by unpublished opinion*, 1997 WL 702267, 129 F.3d 116 (4th Cir. 1997)(Table)).

Plaintiff has not demonstrated good cause for his delay in requesting the depositions of Mr. Stanfield and Mr. Rizor. Plaintiff admits that he requested the depositions the day before discovery closed. Therefore, Plaintiff's motion to compel the depositions of Defendant's employees will be denied. In any event, Mr. Stanfield's potential testimony regarding bar closing procedures at the Pose Ultra Lounge is irrelevant to Plaintiff's claims, as Plaintiff will not be permitted to add claims regarding Defendant's other employees. *See supra*.

## VIII.    Conclusion

For the foregoing reasons, Plaintiff's motion for leave to file a second amended complaint will be granted in part and denied in part, Defendant's motion for summary judgment and to exclude Plaintiff's expert witnesses filed by Defendant Opryland Hospitality, LLC will be granted in part as to Plaintiff's lost wages damages claim and Plaintiff's negligent hiring and retention claims and denied in part as to Plaintiff's negligent training and *respondeat superior* claims, Plaintiff's motion for leave to file a surreply in response to Defendant's motion for summary judgment will be denied, Plaintiff's motion to bar expert testimony will be denied, Plaintiff's motion requesting

missing witness and spoliation of evidence instructions will be denied, and Plaintiff's motion to compel discovery depositions will be denied.  A separate Order will follow.

                                                 /s/

                                           DEBORAH K. CHASANOW
                                           United States District Judge