IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSHUA HARE                          :
                                     :
     v.                              :    Civil Action No. DKC 09-0599
                                     :
OPRYLAND HOSPITALITY, LLC            :
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for review is the motion of Plaintiff Joshua Hare for voluntary dismissal or to reconsider the court's order and opinion of September 17, 2010. (ECF No. 71). A hearing was held and the parties have submitted supplemental memoranda in support of their positions. (ECF Nos. 81, 83, 85, 86). For the reasons that follow, Plaintiff's motion will be granted in part and denied in part.

**I. Background**

The facts of this case have already been set forth in ECF No. 43, and will be summarized only briefly here. On the evening of July 28 and the morning of July 29, 2008, Plaintiff attended an event called the "White Party" at the Pose Ultra Lounge, part of the Gaylord National Resort and Convention Center at National Harbor, a property owned by Defendant Opryland Hospitality. At the end of the party, around 3:00 or 3:30 a.m., Plaintiff's group was approached by security guards

who asked them to leave. One of Plaintiff's friends got into an argument with a busboy and security guards. An altercation then ensued between Plaintiff and a security guard named Karl Hedgeman, and Plaintiff alleges that he was struck in the face with a bottle by Mr. Hedgeman. Plaintiff suffered a facial laceration and has a permanent scar as a result of the events that night.

The relevant procedural background is as follows. Plaintiff initially filed his complaint in state court on November 28, 2008. The case was removed to federal court and Plaintiff filed his first amended complaint on March 10, 2009. The amended complaint alleged that (1) Defendant was liable for Plaintiff's injuries under the theory of *respondeat superior* because Mr. Hedgeman was acting within the scope of his employment at the time he injured Plaintiff and that (2) Defendant was liable for negligent hiring, retention, and training. (ECF No. 6). Discovery proceeded throughout the spring, summer, and early fall of 2009. On November 18, 2009, after the close of discovery, Defendant filed a motion for summary judgment. (ECF No. 22). In its reply brief, Defendant remarked in a footnote that Plaintiff did not have a pending claim of negligent supervision. (ECF No. 35, at 4 n.1). On January 25, 2010, Plaintiff responded by filing a motion for

leave to file a second amended complaint that included a claim of negligent supervision as well as claims that Opryland's employees mishandled the closing procedures and that Opryland negligently trained staff other than Mr. Hedgeman. (ECF No. 38).

This court ruled on Plaintiff's motion for leave to file a second amended complaint in an order and accompanying memorandum opinion on September 17, 2010. (ECF Nos. 43, 44). Plaintiff's motion was granted in part and denied in part. The opinion stated that it was "far too late in this case for Plaintiff to add new claims against Defendant relating to Defendant's supervision and training of employees other than Mr. Hedgeman." (ECF No. 43, at 8). Plaintiff was permitted to add allegations pertaining to Defendant's hiring, training, and retention of Mr. Hedgeman in paragraphs 8(D) and 8(E) of the second amended complaint because these counts did not significantly change the scope of the case, but Plaintiff had not established good cause to amend the complaint to include the other requested claims or that doing so would not be prejudicial to Defendant. (*Id.*). When the court's opinion was issued, Plaintiff did not move for reconsideration within the time permitted under the Local Rules, nor did he file an amended complaint with the permitted claims from paragraphs 8(D) and 8(E).

Nearly three months later, on December 13, 2010, the parties appeared for a pretrial conference in chambers. At that time, counsel for Plaintiff indicated that he had interpreted the court's September 17th ruling to permit Plaintiff to present at trial a claim that Defendant was liable for negligent supervision of Mr. Hedgeman. Plaintiff's counsel explained then, and in his subsequent written request for reconsideration, that he had understood the prior ruling to bar "only those claims related to negligent training and supervision of employees other than Mr. Hedgeman." (ECF No. 71, at 6).

Following the pretrial conference Plaintiff filed the present motion for reconsideration or voluntary dismissal. (*Id.*). A hearing on the motion was held in court on December 21, 2010. After the hearing, Plaintiff submitted two supplements to its motion, Defendant submitted a response in opposition, and Plaintiff submitted a reply. (ECF Nos. 81, 83, 85, 86).

**II. Analysis**

Before addressing the merits of Plaintiff's alternative requests for relief, some context regarding the nature of the claim Plaintiff is seeking to add to the case may be useful.

Plaintiff seeks to add the claim that Defendant is liable for its negligent supervision of Mr. Hedgeman, the security

4

guard who is alleged to have hit Plaintiff in the face. Specifically, Plaintiff contends that there was an Opryland manager present in the Pose Ultra Lounge at the time of the altercation who should have intervened to supervise and prevent Mr. Hedgeman from hitting the Plaintiff. Plaintiff's counsel contends that this manager can be seen in the surveillance videos from the night of June 28, 2008, wearing a white sport coat that distinguishes him from the other Opryland staff and security who were wearing black. Counsel indicated at the hearing that his belief that the individual was a manager is based on information from his client, Plaintiff Hare. Plaintiff allegedly overheard this individual telling Mr. Hedgeman to go into his office after Plaintiff was hit, and Plaintiff subsequently learned that the individual was a manager named Anthony. In addition, counsel proffered that a few days after the altercation when Plaintiff called the Pose Ultra Lounge and asked to speak with the manager named Anthony about the incident, the individual who came to the phone told Plaintiff to speak with the lawyers.

After the hearing, Plaintiff submitted a supplement to his motion that provided additional record support for his contention that the individual shown in the surveillance video was a manager who should have intervened to stop Mr. Hedgeman.

5

(*See* ECF No. 81, at 5-6). Plaintiff pointed to his own deposition testimony noting that "the general manager was there" the night of the altercation and that the individual told Plaintiff he was the general manager and Plaintiff's friend Omari confirmed that he was the manager. (*Id.* at 5) (citing ECF No. 81-5, at 46, 62). Plaintiff also testified that he recalled the manager's name was Anthony and that later in the evening Anthony told Plaintiff to give him a call. (*Id.*) (citing ECF No. 81-5, at 61-63). In addition, Plaintiff offers the deposition testimony of Quinette Leflore, a potential trial witness, that, following the altercation, a manager walked by her with Mr. Hedgeman and told him to "go to my office, you need to go to my office, just go there and stay there." (*Id.* at 6) (citing ECF No. 81-7, at 20-21). Plaintiff also points to the more equivocal testimony of his friend James Turner who stated that right after the incident he "spoke to the manager or – may have been the manager of Pose that night." (*Id.*; ECF No. 81-8, at 37). In his second supplement, Plaintiff explained that he had conducted internet searches and learned the full identity of the individual in the surveillance videos from newspaper reports; he was the general manager of Pose Ultra Lounge in June 2008, Anthony Rakis. (ECF No. 83, at 1-2). Plaintiff also contends that Defendant Opryland knew the identity of this

6

individual since at least July 2009 but did not properly identify him in response to an interrogatory asking for the identity of all individuals with knowledge of facts related to the case. (*Id.* at 6).

Counsel for Defendant Opryland stated at the hearing that he did not know the identity of the individual in the surveillance videos and had not discussed the issue with his client. In its opposition to Plaintiff's motion, filed after the hearing, Defendant spends little time on this issue and instead focuses on its argument that Plaintiff cannot succeed in its claim of negligent supervision because there is no evidence to show that Opryland knew or should have known that Mr. Hedgeman was dangerous. (ECF No. 85, at 1-6). Defendant does point out that Mr. Rakis was one of two individuals with the name Anthony included in a letter dated July 30, 2009, that provided the names of Opryland employees working at the Pose Ultra Lounge on June 28-29, 2008 (ECF No. 74-12), and Defendant avers that Mr. Rakis's name was omitted from its interrogatory responses due to a drafting error. (ECF No. 85, at 7 n.6). Defendant also notes that Plaintiff has no evidence that Mr.

Rakis had supervisory authority over Mr. Hedgeman. (ECF No. 85).[1]

In Maryland, the elements of a claim for negligent supervision are typically combined with the elements of claims for negligent hiring and retention. The courts have stated that "[i]n order to prove a cause of action for either negligent hiring or supervision or retention, the Plaintiff must establish that [his] injury was caused by the tortious conduct of [an employee], that the employer knew or should have known by the exercise of diligence and reasonable care that the [employee] was capable of inflicting harm of some type, that the employer failed to use proper care in selecting, supervising or retaining that employee, and that the employer's breach of its duty was the proximate cause of the Plaintiff's injur[y]." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F.Supp. 720, 751 (D.Md. 1996); *see also Williams v. Cloverleaf Farms Dairy, Inc.*, 78 F.Supp.2d 479, 483 (D.Md. 1999). Although the Fourth Circuit has stated when applying South Carolina law that an employer may be held liable under a theory of negligent supervision for a failure to exercise reasonable care to control an employee from

---

[1] Defendant also brings to the court's attention the fact that Opryland's 30(b)(6) deponent identified two other individuals, Damon Ivory and Craig Carney, as Mr. Hedgeman's supervisors the night of June 29, 2008, and that Plaintiff never requested to depose these individuals. (ECF No. 85, at n.7).

intentionally harming third parties while acting outside the scope of his employment, *see, e.g., Davis v. USX Corp.*, 819 F.2d 1270, 1274 (4th Cir. 1987), this formulation has never been used in Maryland or by a court applying Maryland law.

Plaintiff's theory of negligent supervision seems to be that Defendant Opryland, acting through a manager/supervisor on site the night of the altercation, failed to intervene to prevent Mr. Hedgeman from injuring the Plaintiff and is thus liable. Unlike a typical negligent supervision claim, here Plaintiff is essentially attempting to impose liability on Opryland under the doctrine of *respondeat superior* for the actions of an employee other than Mr. Hedgeman. To succeed on such a claim Plaintiff must first establish that the alleged manager from the surveillance video was an Opryland employee, that he had supervisory responsibilities, that he had the authority to supervise or control Mr. Hedgeman that evening, then that he had the requisite knowledge that Mr. Hedgeman was about to do something he should not, and finally, the ability to control him. Plaintiff must also prove that the manager was acting within the scope of his employment when he failed to intervene to stop Mr. Hedgeman.

**A.   Standard of Review for Motion for Voluntary Dismissal**

Plaintiff argues that the case should be voluntarily dismissed without prejudice pursuant to Rule 41(a)(2) so that he can immediately file a new complaint after dismissal with the negligent supervision claim.[2]  Defendant opposes this motion and maintains that a voluntary dismissal at this stage in the litigation would result in substantial prejudice to its interests.

Fed.R.Civ.P. 41(a)(2) allows for dismissal by court order after the opposing party has served either an answer or motion for summary judgment and without consent of all parties who have appeared.  It provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *Id.*  The purpose of Rule 41(a)(2) is "to allow voluntary dismissals unless the parties will be unfairly prejudiced."  *Davis*, 819 F.2d at 1273 (citations omitted).  The decision to grant or deny a voluntary dismissal under Rule 41(a)(2) "is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion."  *Id.*  The factors that should guide a

---

[2] Plaintiff filed a new action on May 26, 2011, which has been stayed pending resolution of the motions in this case. *Hare v. Opryland Hospitality, LLC and Anthony Rakis*, DKC 11-1439.

district court in deciding a motion under Rule 41(a)(2) include "the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, insufficient explanation of the need for a voluntary dismissal, and the present stage of litigation." *Miller v. Terramite Corp.*, 114 F.App'x. 536, 540 (4th Cir. 2004) (quoting *Phillips USA, Inc., v. Allflex USA, Inc.*, 77 F.3d 354, 358 (10th Cir. 1996)). The potential prejudice to the non-moving party is a key factor, but the Fourth Circuit has recognized that "[its] jurisprudence on the issue of what constitutes sufficient prejudice to a nonmovant to support denial of a motion for voluntary dismissal under Rule 41(a)(2) is not free from ambiguity." *Howard v. Inova Health Care Servs.*, 302 F.App'x 166, 179 (4th Cir. 2008), *cert. denied*, 129 S.Ct. 2766 (2009). The Fourth Circuit in *Howard* further explained:

> In *Davis*, we noted that "[i]t is well established that, for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit" or "the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation." 819 F.2d at 1274-75. Similarly, in *Fidelity Bank PLC v. N. Fox Shipping N.V.*, we held that "the mere filing of a motion for summary judgment is not, without more, a basis for refusing to dismiss without prejudice." 242 F.App'x 84, 89 (4th Cir. 2007) (quoting *Andes* [*v. Versant Corp.*], 788 F.2d 1033, 1036 n.4 [(4th Cir. 1986)] (internal quotations and alterations

11

omitted)). However, we have also found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. *See, e.g., Miller*, 114 F.App'x at 540 (affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); *Francis v. Ingles*, 1 F.App'x 152, 154 (4th Cir. 2001) (affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and because "the motivation for the motion appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); *Skinner v. First Am. Bank of Va.*, 64 F.3d 659, 1995 WL 507264, at *2-3 (4th Cir. 1995) (stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is not required to allow a party to "avoid an adverse ruling in federal court"); *Sullivan v. Westinghouse Elec. Corp.*, 848 F.2d 186, 1988 WL 54059, at *2 (4th Cir. 1988) ("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion.").

*Howard*, 302 F.App'x at 179-80. Ultimately the decision is highly discretionary.

Here, the balance of factors does not tip in Plaintiff's favor. Plaintiff's motion came on the eve of trial after the

parties had completed discovery, summary judgment briefing, and significant pretrial preparations including the submission of proposed *voir dire*, jury instructions, verdict forms, and multiple motions *in limine*. While Plaintiff insists that none of the discovery or expenses Defendant has already incurred will be wasted because the new case that will be filed immediately will involve the same claims plus negligent supervision (ECF No. 71, at 9), at the hearing Defendant aptly noted the unpredictability of litigation and the strong likelihood that a dismissal would result in additional depositions and the potential need to rebrief many issues. Indeed, it is highly unlikely that a dismissal and refiling would not result in substantial delays and increased costs for both parties as well as the court. These costs would be only partially allayed by Plaintiff's offer to pay for additional expenses incurred by Defendant as a result of the voluntary dismissal and refiling.

In addition, throughout the course of this litigation Plaintiff's conduct has repeatedly demonstrated a lack of diligence and motivation. Plaintiff's expert reports were not prepared and produced in accordance with the scheduling order nor did Plaintiff timely request a modification of its deadlines (*See* ECF No. 43, at 25-26). As discussed above, Plaintiff's request for leave to file a second amended complaint was

extremely late and Plaintiff's motion for reconsideration/voluntary dismissal was filed over three months after the court issued its opinion denying the request for leave to amend.

Finally, the present stage of the litigation weighs against permitting a voluntary dismissal. Plaintiff's request came not merely after summary judgment, but on the eve of trial. Both parties and the court have expended significant time and resources in preparing for trial. A voluntary dismissal would not only further delay an ultimate resolution on the merits, but also be inefficient and costly.

For all these reasons, Plaintiff's request for a voluntary dismissal will be denied.

**B. Standard of Review for Motion for Reconsideration**

In the alternative Plaintiff moves for reconsideration of the court's prior ruling denying leave to amend his complaint to add a claim of negligent supervision. The court has discretion whether to reconsider an interlocutory ruling, although Local Rule 105.10 mandates that motions for reconsideration be filed "not later than fourteen (14) days after entry of the order."

Plaintiff argues that he should have been allowed to amend his complaint under Fed.R.Civ.P. 15, which provides that courts should freely give leave to a party to amend when justice so

requires, even as late as during trial, "when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." (ECF No. 71, at 12) (citing Fed.R.Civ.P. 15(b)(1)). Plaintiff contends that the court's prior ruling stating that Rule 15 had to be read in connection with Rule 16(b)'s requirement that good cause must be shown to justify granting leave to amend was in error because it drained the Rule 15 requirement of any meaning. (*Id.*). In support of this view, Plaintiff relies on a 1973 opinion from the Fifth Circuit. Plaintiff also contends that both the Rule 15 and Rule 16 standards were met in its request for leave to amend. (*Id.* at 13-16).

In this circuit, prior case law makes clear that when the scheduling order's deadline for amending the pleadings has passed, the Rule 16 requirement that a party satisfy the good cause standard must be met before considering potential prejudice under Rule 15. *See Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008). As noted in our September 17th opinion, this rule is also applied in the First, Second, Fifth, Sixth, Eighth, and Eleventh Circuits. (ECF No. 43, at 7) (citing *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 154-55 (1st Cir. 2004); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2$^{d}$

Cir. 2000); *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003); *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003); *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)). The Fifth Circuit opinion on which Plaintiff relies predates the Rule amendments in 1983, which added subsection b to Rule 16, the relevant portion for our purposes that addresses amendments to the scheduling order. (*See* ECF No. 71, at 13) (citing *Wallin v. Fuller*, 476 F.2d 1204, 1208-09 (5th Cir. 1973) (holding that the district court should have allowed amendment of a pretrial order to account for new theories developed from facts presented at trial)). In a more recent opinion, the Fifth Circuit held that it would apply the same rule as the Fourth Circuit does, specifically that "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enters., L.L.C.*, 315 F.3d at 536. Plaintiff is incorrect that the court's prior opinion used the wrong standard.

A large portion of Plaintiff's new motion merely reiterates his arguments from his initial motion for leave regarding how

16

the good cause and prejudice standards have been met. These arguments were found lacking before and remain unconvincing. In his supplement, Plaintiff focuses on the argument that the topic of negligent supervision was a focus of discovery as it proceeded in the case and is ready to be heard at trial without the need for additional depositions. (ECF No. 81, at 10-11). Plaintiff allows, however, that in light of the trial date's postponement, Opryland should have time to take whatever additional discovery it requires and does not oppose a court ordering permitting Defendant to take additional discovery related to the negligent supervision claim. (*Id.* at 11; ECF No. 86, at 10). Plaintiff also argues that evidence regarding the conduct of the manager in question is relevant to Opryland's defense of contributory negligence. (ECF No. 81, at 12).

The court would be well within its discretion to deny both of Plaintiff's requests and to order that the case proceed to trial in its present state. Yet this option would surely result in substantial post-trial briefing and appeals and could delay an ultimate resolution on the merits for years. Although Defendant has formally opposed both of Plaintiff's requests, it may prefer to proceed on the merits to reach a resolution now, rather than to prolong the process indefinitely.

17

Accordingly, and in order to avoid the possibility of multiple trials, the court will permit Plaintiff to amend its complaint to include a claim of negligent supervision of Mr. Hedgeman by the alleged Opryland manager visible in the surveillance film. In light of Plaintiff's counsel's representations at the hearing regarding his readiness to proceed to trial on the new claim, he will not be permitted to conduct any additional discovery regarding the additional claim. But Defendant may, if it wishes, seek leave to conduct additional discovery limited to this new claim and any potential defenses thereto.

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion will be granted in part and denied in part. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
